# BRADLEY ET AL. v. LUNDING, CHAIRMAN, STATE BOARD OF ELECTIONS COMMISSIONERS, ET AL.

No. A–695 (75–1146).   Decided February 17, 1976

MR. JUSTICE STEVENS, Circuit Justice.

On February 13, 1976, appellants filed an application for a stay of the judgment of the Supreme Court of Illinois entered on January 19, 1976, reversing an order entered by the Circuit Court for the Seventh Judicial Circuit, Sangamon County, Ill., on January 12, 1976, enjoining the defendant officers of the Illinois State Board of Election Commissioners from conducting a lottery for the purpose of assigning ballot positions in accordance with Regulation 1975–2 adopted by the State Board of Elections on November 21, 1975.

Regulation 1975–2 prescribes a lottery system for breaking ties resulting from the simultaneous filing of petitions for nomination to elective office.[1]   Appellants

---

[1] The regulation provides in part:

"1. The names of all candidates who filed simultaneously for the same office shall be listed alphabetically and shall be numbered consecutively commencing with the number one which shall be as-

are independent candidates for judicial office who argue that the regulation increases the probability that their names will appear in the bottom portion of the ballot rather than in the middle portion, and therefore that their federal constitutional rights are impaired.[2] This consequence flows from the fact that candidates filing a group petition for the same office are treated as one for lottery purposes.

As I understand the regulation, it also increases the

---

signed to the candidate whose name is listed first on the alphabetical list; provided, however, that candidates filing a group petition for the same office shall be treated as one in the alphabetical listing using the name of the first candidate for such office to appear on the petitions as the name to be included in the alphabetical list. . . .

"2. All ties will be broken by a *single* drawing. . . ."

[2] Two separate election contests are involved. Ten judges are to be selected by the voters of the city of Chicago and 15 by the voters of Cook County. With respect to the municipal election, at the opening of the filing period, 14 candidates filed contemporaneous petitions for Democratic nominations for the 10 Chicago judgeships. Four of these filed individual petitions; the other 10 filed a single group petition. Pursuant to the lottery procedure prescribed by the regulation, see n. 1, *supra,* each of the individual petitions, as well as the group petition, had one chance in five of being drawn for the top position on the ballot. Thus, each individual candidate's chance of receiving the first position was considerably better than if all 14 names were treated separately in the drawing. On the other hand, since the group petition also had one chance in five of being drawn first, the four independents ran the risk that if that should happen, none of them could appear in any of the first 10 positions.

Appellants' statistical evidence indicates that if the names of all 14 municipal candidates were placed in the lottery on an individual basis, each of the appellants would have only a 28.6-percent chance (4 out of 14) of being below the top 10, whereas the regulation increases that chance to 50 percent. On the other hand, each of them now has a 50-percent chance of being among the top four names on the ballot, whereas on a completely independent basis, each would have only a 28.6-percent chance.

probability that each of the appellants' names will appear in the top portion of the ballot rather than the middle portion. Thus, the adverse effect of increasing the probability of an especially unfavorable position is offset by the beneficial effect of increasing the probability of an especially favorable position.[3] Although there may be undesirable consequences of a regulation which permits organization candidates to be grouped in sequence on the ballot, I do not understand the Jurisdictional Statement to present any question as to the propriety of that feature, in and of itself, of the regulation. The questions presented relate only to the impact of the regulation on the ballot positions of the individual appellants.[4] With respect to that matter, I find insufficient indication of unfairness or irreparable injury to warrant the issuance of a stay against enforcement of the judgment of the Supreme Court of Illinois. Presumably because the questions presented are capable of repetition, appellants

---

[3] I do not suggest that the advantage precisely offsets the disadvantage; for no doubt, when voters are to choose 10 candidates from a long list of unfamiliar names, there is a risk that many will simply pick the first 10. Nevertheless, the difference between the disadvantage and the advantage hardly seems significant enough to warrant either the emergency attention of this entire Court, or a summary substitution of my judgment for the unanimous appraisal of the problem by the Justices of the Supreme Court of Illinois.

[4] As stated at p. 3 of the Jurisdictional Statement, the questions presented by the appeal are:

"Does the federally-protected right to equal treatment in the assignment of state ballot positions apply only to the top ballot position? Or does it apply to the second and successive positions as well, at least where more than one candidate will be elected to the same office?

"Where a state system for assigning ballot positions increases the likelihood that politically-favored candidates will obtain the higher ballot positions, does that system deny due process, equal protection and political rights as guaranteed by the federal Constitution?"

do not suggest that there is any danger that the election will moot the case; accordingly, the stay need not issue to protect our jurisdiction.

The motion for stay is denied.